IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION


Debra D. B.[1]

               Plaintiff,

   v.

COMMISSIONER, Social Security
Administration,

               Defendant.

No. 6:18-cv-01811-HZ

OPINION & ORDER


HERNÁNDEZ, District Judge:

     Plaintiff brings this action for judicial review of the Commissioner's final decision

denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social

Security Act. The Court has jurisdiction under 42 U.S.C. § 405(g) (incorporated by 42 U.S.C.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of
the non-governmental party or parties in this case. Where applicable, this opinion uses the same
designation for non-governmental party's immediate family members.

§ 1382(c)(3)). Because the Administrative Law Judge's decision is free of legal error and supported by substantial evidence in the record, the Court AFFIRMS the decision and DISMISSES this case.

## BACKGROUND

Plaintiff was born on April 4, 1956 and was fifty-two years old on December 31, 2008, the alleged disability onset date. Tr. 69.[2] Plaintiff met the insured status requirements of the Social Security Act ("SSA" or "Act") through March 31, 2011. Tr. 13. Plaintiff has at least a tenth-grade education and is able to perform past relevant work. Tr. 24. Plaintiff claims she is disabled based on conditions including "multiple sclerosis with neurogenic (overactive) bladder and mild incomplete emptying, and sciatica." Tr. 16.

Plaintiff's benefits application was denied initially on July 16, 2014 and upon reconsideration on January 8, 2015. Tr. 13. A hearing was held before Administrative Law Judge Steven A. De Monbreum on January 12, 2017. Tr. 31–68. ALJ De Monbreum issued a written decision on March 17, 2017, finding that Plaintiff was not disabled and therefore not entitled to benefits. Tr. 13–25. The Appeals Council declined review, rendering ALJ De Monbreum's decision the Commissioner's final decision. Tr. 1–6.

## SEQUENTIAL DISABILITY ANALYSIS

A claimant is disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability claims are evaluated according to a five-step procedure. *Valentine v.*

---

[2] Citations to "Tr." refer to the administrative trial record filed here as ECF No. 7.

*Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). The claimant bears the ultimate burden of proving disability. *Id.*

At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

At step three, the Commissioner determines whether claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

At step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity ("RFC") to perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. At step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Commissioner meets its burden and proves that the claimant is able to perform other work which exists in the national economy, the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date. Tr. 15.

At step two, the ALJ determined that Plaintiff had "the following 'severe' impairments: multiple sclerosis ("MS") with neurogenic (overactive) bladder and mild incomplete emptying, and sciatica." Tr. 16. The ALJ determined that Plaintiff's nephrectomy for renal carcinoma, chronic cystitis, mild urinary urge/stress incontinence, and headaches were not severe. Tr. 16.

At step three, the ALJ determined that Plaintiff did not have any impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 16.

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform light work. The ALJ further specified that Plaintiff

> is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk for a total of about 6 hours in an 8-hour day and sit for a total of about 6 hours in an 8-hour day. She can occasionally climb ramps/stairs, but never climb ladders/ropes/scaffolds. She can occasionally balance, kneel, crouch and stoop, but never crawl. She must avoid all exposure to temperature extremes as well as to hazards such as dangerous machinery and unprotected heights. Additionally, the claimant requires a workplace with an accessible toilet facility.

Tr. 17.

At step four, the ALJ determined that Plaintiff was capable of performing past relevant work. Tr. 24. Accordingly, the ALJ concluded that Plaintiff was not disabled and did not move on to step five. Tr. 24.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings are based on legal error or are not supported by substantial evidence in the record as a whole. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal

quotation marks omitted). Courts consider the record as a whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's.") (internal quotation marks omitted).

## DISCUSSION

Plaintiff raises two issues on appeal. She argues the ALJ erred by (1) improperly rejecting her subjective symptom testimony and (2) failing to credit lay witness testimony.

### I.      Subjective Symptom Testimony

Plaintiff argues the ALJ erred by rejecting her neurogenic bladder and fatigue testimony. The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). Once a claimant shows an underlying impairment and a causal relationship between the impairment and some level of symptoms, clear and convincing reasons are needed to reject a claimant's testimony if there is no evidence of malingering. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008) (absent affirmative evidence that the plaintiff is malingering, "where the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains, an adverse credibility finding must be based on clear and convincing reasons" (quotation marks and citation omitted)); *see also Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (the ALJ engages in a two-step analysis for subjective symptom evaluation: First, the ALJ determines whether there is "objective medical evidence of an underlying impairment which could reasonably be expected to

produce the pain or other symptoms alleged"; and second, "if the claimant has presented such evidence, and there is no evidence of malingering, then the ALJ must give specific, clear and convincing reasons in order to reject the claimant's testimony about the severity of the symptoms." (quotation marks and citations omitted)). An ALJ must include specific findings supported by substantial evidence and a clear and convincing explanation for discounting a plaintiff's subjective symptom testimony.

When evaluating subjective symptom testimony, an ALJ may properly consider several factors, including a plaintiff's "daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence." *Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir. 1995).* The ALJ may also consider a plaintiff's ability to perform household chores, the lack of any side effects from prescribed medications, and the unexplained absence of treatment for excessive pain. *Id.*

Here, the ALJ summarized Plaintiff's testimony related to her neurogenic bladder and fatigue as follows:

> At the hearing, the claimant asserted that she has not been able to work on a full-time, regular basis since "probably 2009," due to problems with multiple sclerosis including symptoms of pain and fatigue, as well as bladder dysfunction with urinary urgency/frequency and difficulties adequately voiding/emptying her bladder. She indicated she could not work even a sedentary-type job because of needing to take frequent breaks to use the toilet, and having to self-catheterize twice a day to empty her bladder. She estimated that during the period between 2009 and 2010, she would have to use the toilet about every hour throughout the day, and had difficulties urinating/emptying her bladder to the extent she had to use a catheter. She described problems with pain and straining to urinate, and taking a long time in the bathroom, often 10 to 15 minutes.
>
> The claimant further testified that . . . she would have problems sitting or standing for prolonged periods due to pain and weakness, as well as difficulties bending down or rising from sitting to a standing. . . . She claimed that she required frequent rest periods to sit in a recliner or lie down. She also described having a gait disturbance and using a walker for support. She indicated that her MS symptoms/relapses became worse after 2007. The claimant asserted that she could

not have performed any job requiring her to stand/walk for extended periods, or even a sedentary job, because she could not sit for prolonged periods without the opportunity to get up and stretch frequently. She claimed that if she sits for a "period of time [she] can hardly move."

Tr. 18–19.

The ALJ concluded that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms" and did not identify any evidence of malingering. Tr. 19. However, the ALJ found that Plaintiff's allegations were inconsistent with the record. Tr. 19. Specifically, the ALJ concluded that (1) Plaintiff's work activities were inconsistent with her testimony; (2) Plaintiff's daily activities were "inconsistent with allegations of more limiting symptoms;" and (3) Plaintiff's complaints were not supported by objective medical evidence.

### 1. Work Activities

An ALJ may consider a plaintiff's work activities when evaluating her subjective symptom testimony. *See Bray v. Comm'r*, 554 F.3d 1219, 1227 (9th Cir. 2009); SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016) (prior work and efforts to work are factors used to evaluate intensity, persistence, and limiting effects of an individual's symptoms); 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). Here, the ALJ provided two work-related reasons to discount Plaintiff's subjective symptom testimony: Plaintiff (1) "stopped working due to office closure not because of disability" and (2) continued to look for work during the period of alleged disability. Tr. 21.

An ALJ may discount a plaintiff's subjective symptom testimony when the alleged impairment is not the reason the plaintiff stopped working. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (plaintiff testified his diabetes was not a disabling problem, was controlled

by medication, and was not the reason he stopped working); *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (plaintiff's pain complaints were not credible because he reported at the administrative hearing, and also to his doctors, that he left his job because he was laid off, not because he was injured). Here, Plaintiff's alleged disability onset date was December 31, 2008. While it is unclear whether Plaintiff stopped working in December 2008 or March 2009, neither date changes the analysis; Plaintiff testified that she stopped working because her office closed, not because she became disabled. Tr. 21, 41–42.

Plaintiff's attorney speculates that, even if the office hadn't closed, Plaintiff still would have stopped working. He also argues the office provided Plaintiff with necessary accommodations. The Court does not, however, see evidence in the record that Plaintiff received bathroom-related accommodations while she was employed as a mail clerk. *See* tr. 321 (Plaintiff cites a single report that she was self-catheterizing "on days where she might have a longer time for bathroom breaks[.]"). Moreover, while Plaintiff's bladder issues may have worsened after she received a pubovaginal sling in 2009, Plaintiff does not allege disability based on the sling's placement or because her bladder issues continued to worsen. Rather, she alleges she became disabled months *before* the sling was placed—an allegation the ALJ found inconsistent with her testimony that she stopped working due to office closure. The Court sees no error in this finding.

An ALJ may also discount a plaintiff's subjective symptom testimony when the plaintiff continues to look for work past her alleged disability onset date. *Dyer v. Berryhill*, 762 F. App'x 439 (9th Cir. 2019) ("[Plaintiff's] testimony that she continued to look for work was inconsistent with her testimony as to total disability."); *Bray v. Comm'r, Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009) (plaintiff's job searches were inconsistent with her testimony as to disability). Here, Plaintiff repeatedly told her providers that "she ha[d] been trying

unsuccessfully to find a job" since her office closed. Tr. 299 (in 2012), 301 (in 2011), 307 (in 2010), 311 (in 2009), 313 (in 2009). While Plaintiff sought to clarify these records by testifying that she "didn't really look" for work, tr. 42, it was not error for the ALJ to credit the repeated statements she made to her doctors instead.

### 2. Daily Activities

An ALJ may discount a plaintiff's testimony when it is inconsistent with her daily activities. *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007). As explained in *Orn*, there are "two grounds for using daily activities to form the basis of an adverse credibility determination:" where the activities contradict a plaintiff's own testimony, or where they meet the threshold of transferrable work skills. *Id.*[3]

Here, the ALJ concluded that Plaintiff's "daily functioning and other reported activities during the period at issue are inconsistent with allegations of more limiting symptoms." Tr. 21. Specifically, he found that:

> Despite claims of incapacitating pain, weakness and fatigue, the record indicates that claimant could attend to her personal care/hygiene and medications independently, prepare complete family meals, and perform various household chores (e.g., dishes, laundry, dusting, cleaning bathroom) (Ex. B5E; Hearing Testimony). The claimant also reported that she could get outside "every day," travel independently by driving herself or receiving rides from others, shop in stores weekly, manage her money/pay bills, attend medical appointments, and engage in hobbies such as reading and playing cards with her mother (Id). In addition, the claimant reported that she could engage in social activities "often," including spending time with family weekly, visiting her mother and going to the American Legion Hall (Id). Notably, although she alleged having worsening pain and fatigue from MS, as well as major difficulties with bladder emptying, the claimant testified that she performed daycare work for two to three years, including in 2015, when she cared for a "handicapped" child, and initially worked "every day for about a year." Further, in May 2009, the claimant reported to treating physician Dr. Lafrance that she and her husband had been "cleaning out their 5th wheel [truck] preparing to sell it," and complained of new right sciatica pain afterwards (Ex. B2F/39).

---

[3] There is no evidence that Plaintiff's daily activities meet the threshold of transferrable work skills.

*Id.* The ALJ then concluded that "[s]uch a range of activities/demonstrated functioning strongly indicates that the claimant could perform a limited range of light exertional work." *Id.*

The Court fails to see how many of these activities contradict Plaintiff's subjective symptom testimony. For example, the ALJ did not explain how Plaintiff's ability to "get outside," attend her medical appointments, and engage in hobbies such as "reading and playing cards" are inconsistent with her testimony. To the contrary, Plaintiff testified that she "can't do a lot of walking or standing," she can only shop once a week because she starts "hurting" and has to rest, and her "hobbies" are primarily limited to activities she can do while seated in a recliner. Tr. 52, 181, 182; *see also Orn*, 495 F.3d at 639 (mere fact that claimant can carry out certain minimal activities such as reading, watching television, or coloring in coloring books does not detract from credibility as to overall disability). Similarly, while the ALJ implied that Plaintiff went to the American Legion Hall "often," Plaintiff wrote only that she "tr[ies] to go once a month[.]" Tr. 182.

Nevertheless, the Court finds that the ALJ did not err in relying on Plaintiff's daycare activities. Plaintiff testified that she continued to perform these daycare activities after her alleged disability onset date. Specifically, she registered with "the Family Connections" and reported working from 2010 through 2014, four to nine hours per day, three to five days per week. Tr. 43, 166. This work included feeding, reading, changing diapers, putting children down for naps, playing, and teaching. Tr. 166. While it is unclear exactly how many children Plaintiff cared for, it appears from the record that, at one point, she cared for a two-year-old and a five-year-old every day. Tr. 40, 51, 166. At another point, she cared for an infant. Tr. 166. Plaintiff also testified that she worked for the TNT Fiscal Intermediary Services for two years doing "some day care for a handicapped child." Tr. 39. While Plaintiff testified that she would "rest"

while babysitting—i.e., take naps or sit in a recliner, tr. 51—the duration and frequency of this reported work, the ages of the children, the disabled status of one child, and the fact that she appears to have obtained this work through sources such as TNT Fiscal Intermediary Services and the Family Connections, also constitute substantial evidence to support the ALJ's position. The ALJ did not, therefore, err in relying on these daycare activities to discount Plaintiff's subjective symptom testimony.

### 3.  Objective Medical Evidence

An ALJ may consider objective medical evidence in evaluating a plaintiff's subjective symptom testimony, so long as the ALJ does not reject such testimony solely because it is unsubstantiated by the objective medical evidence. 20 C.F.R. § 416.929(c); *Rollins v. Massanari*, 261 F.3d 853, 856, 857 (9th Cir. 2001)  ("Once a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain[;] . . . . While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." (internal quotation and brackets omitted)).

Plaintiff challenges the ALJ's discussion of the objective medical evidence related to her neurogenic bladder and fatigue testimony.

### A.  Neurogenic Bladder

Plaintiff testified that, due to a neurogenic bladder condition, she struggles to empty her bladder. Tr. 18. She testified that she uses the toilet every hour, each visit takes from ten to fifteen minutes, she strains to urinate, and she has to self-catheterize daily. Tr. 45–47. The ALJ

relied on Plaintiff's successful treatment for incontinence, through a pubovaginal sling, to discredit this testimony. Specifically, he wrote that "a May 2009 follow-up evaluation status-post sling placement indicated that claimant had unremarkable urine testing, her post-void residual was stable, and she had no significant pain and no bleeding (Ex. B2F/38)." Tr. 21. Additionally, "[a]lthough the claimant reported 'some leakage issues,' . . . these seemed to be urge related and she had 'not really had much activity' and not reported any stress urinary leakage." *Id.*

Plaintiff argues the ALJ misunderstood the purpose and effect of a pubovaginal sling. The pubovaginal sling was placed to address issues related to incontinence. Tr. 319. Plaintiff did not testify that she was disabled due to incontinence, she testified that she was disabled due to her difficulties urinating. Tr. 46. While the sling successfully treated her incontinence, it did not address the voiding issues that led her to take bathroom breaks every hour, up to fifteen-minutes at a time.

Additionally, while the ALJ identified unremarkable urine testing, post-void residual stability, and a lack of significant pain or bleeding, the ALJ did not explain how these findings contradict, or even fail to support, Plaintiff's allegations related to her neurogenic bladder and voiding difficulty. For example, it is not clear from the medical records what urine tests were performed or how "normal" results might contradict Plaintiff's testimony about frequency and straining.

Moreover, while Plaintiff's post-void residual ("PVR") may have been "stable," the ALJ did not explain how this stability might contradict her subjective symptom testimony. "[T]he stability of a condition does not undermine a plaintiff's allegations as to the intensity, persistence, or limiting effects of the symptoms of a condition." *Marti Jean K. v. Comm'r*, No. 6:18-cv-00109-HZ, 2019 WL 301561, at *7 (D. Or. July 10, 2019). Rather, "stable" may simply

mean that a plaintiff's alleged symptoms are not getting worse. *Timothy S. v. Comm'r*, No. 6:17-cv-02043-HZ, 2019 WL 2006689, at *7 (D. Or. May 3, 2019). Here, while a doctor noted that Plaintiff's PVR was stable, it was also elevated. Tr. 315. An elevated PVR is not inconsistent with Plaintiff's testimony that she has to "strain to—I feel like I have to go and I know I need to go and I can't or couldn't so I'd have to strain and I have to sit there awhile." Tr. 46.

Finally, while the ALJ noted that Plaintiff did not experience significant pain or bleeding, the Court finds no record that Plaintiff testified to these symptoms, or that these symptoms are somehow linked to the symptoms she *did* testify to. To the contrary, "[w]hen retention develops slowly, pain may be absent." Urinary Retention, *The Merck Manual* 2362 (19th ed. 2011). In sum, the ALJ erred in relying on objective medical evidence to discount Plaintiff's testimony related to her neurogenic bladder and her need for extended and frequent bathroom breaks.

### B. Fatigue

Plaintiff also testified that she spent "most of the day" resting in a recliner due to fatigue attributed to her MS. Tr. 51–52. Without distinguishing Plaintiff's fatigue testimony specifically, the ALJ found that

> although the claimant complained of debilitating pain, fatigue, and leg weakness with intermittent dizziness/vertigo, her neuromuscular examinations indicated only some mild gait difficulty with tandem walking and mild coordination difficulties with the left hand. Treating providers otherwise noted that claimant consistently demonstrated normal motor strength, muscle tone and reflexes, intact cranial nerves, normal sensation, and/or normal gait and station. (See e.g., Ex. B1F/12, 14, 16, 18, 20, 22; B2F/8, 25, 27, 31, 35, 37). For instance, in May 2009, treating physician Richard Lafrance, MD, noted that claimant had some low back pain and limited back mobility, as well as chronic "mildly disturbed" motor coordination in her left hand and "slightly" depressed right ankle reflexes (Ex. B1F/22). However, the claimant had normal cranial nerves, normal motor exam with normal strength, muscle tone and bulk, and normal sensation (Id). During follow-up MS evaluations with Dr. Lafrance in November 2009, December 2009, June 2010, and December 2010, the doctor noted that claimant appeared well, she had "normal" coordination with only "mildly disturbed fine motor coordination in her left hand," as well as "normal" gait with only "mild difficulties with tandem gait [ and] cornering" (Ex. B1F/14, 16, 20). In addition, Dr. Lafrance again indicated claimant had

normal cranial nerves, normal motor exam with normal strength, muscle tone and bulk, normal reflexes (except "slightly depressed" right ankle reflex), normal sensation and negative Romberg test (for imbalance) (Id).

Tr. 19–20. He also noted, as a general matter, that Plaintiff's "MS symptoms were stable with no symptoms exacerbations and had responded well to medication." Tr. 20.

As a preliminary matter, the ALJ's reliance on Plaintiff's stable MS symptoms and response to medication is without merit. As discussed above, stability alone does not undermine a plaintiff's allegations about the limiting effects of that condition. The ALJ also failed to identify evidence that suggests Plaintiff's fatigue responded to medication.

Moreover, while the ALJ discussed Plaintiff's MS symptoms generally—including her debilitating pain, fatigue, and leg weakness with intermittent dizziness/vertigo—he did not identify, with any particularity, which objective medical evidence presumably discredited her fatigue testimony. Indeed, much of the cited evidence is not relevant to Plaintiff's fatigue at all (e.g., intact cranial nerves, normal sensation, normal gait and station). While it is possible the ALJ believed that normal motor strength and muscle tone contradicted Plaintiff's complaints of fatigue, the ALJ did not explain this connection. To this Court, that connection is not obvious. *See Gregory C. v. Comm'r*, No. 3:18-cv-00971-HZ, 2019 WL 6045583, *13 (D. Or. Nov. 15, 2019)* ("While Plaintiff experiences pain and fatigue, it is not obvious that his impairment would cause him to have muscle atrophy, an unnatural gait, a loss of sensation, or a loss of strength."). Significantly, the Court notes that Plaintiff challenges the ALJ's findings as to her fatigue testimony (i.e., feeling tired and needing to rest throughout the day), not her weakness testimony (i.e., a lack of strength in her lower extremities). The Court will not speculate on the ALJ's unstated reasoning or engage in post-hoc rationalization. Thus, the ALJ erred in relying on objective medical evidence to discount Plaintiff's fatigue testimony.

## C. Harmless Error

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if it is nonprejudicial to the plaintiff or irrelevant to the ultimate disability conclusion. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). A court "look[s] at the record as a whole to determine whether the error alters the outcome of the case." *Molina*, 674 F.3d at 1115. This determination is made on a more-probable-than-not basis. *Id*. at 1119.

Here, while the Court is troubled by the ALJ's errors in evaluating the objective medical evidence related to Plaintiff's bladder and fatigue testimony, the Court finds the ALJ's other reasons for discounting Plaintiff's symptom testimony sufficient to uphold the ALJ's overall symptom evaluation. *See Batson Comm'r, Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that error by an ALJ as to one basis for adverse credibility determination is not fatal to the overall determination if the ALJ gave other reasons which are supported by substantial evidence in the record). In other words, notwithstanding any error related to the objective medical evidence, the ALJ provided clear and convincing reasons, supported by substantial evidence in the record, to discount Plaintiff's subjective symptom testimony when he relied on the fact that Plaintiff stopped working due to office closure, she reported to her doctors that she continued to look for work, and she engaged in ongoing daycare activities.

## II.    Lay Witness Testimony

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)). Lay witness testimony cannot be disregarded without comment, and the ALJ must give germane

reasons for discounting such testimony. *Molina*, 674 F.3d at 1114. Germane reasons must be

specific, *Bruce v. Astrue*, 557 F.3d 1113, 1116 (9th Cir. 2009), and may include, for example,

conflicts with medical evidence and inconsistent daily activities, *Lewis v. Apfel*, 236 F.3d 503,

511–12 (9th Cir. 2001).

     Here, Plaintiff argues the ALJ improperly rejected a letter from Bridget T.,[4] Plaintiff's

daughter. Plaintiff argues the ALJ mischaracterized the substance of Ms. T.'s letter, and that it

provides evidence that (1) Plaintiff's "prior work allowed for accommodations, i.e. for her

daughter to help at the workplace," and (2) Plaintiff needed "to rest a lot." Pl. Br. 18.

     The Court agrees that the ALJ mischaracterized Ms. T.'s letter. Ms. T.'s letter did not

"suggest[] that claimant was incapable [of] working since her MS diagnosis." Tr. 24. Rather, Ms.

T. wrote that while Plaintiff was diagnosed with MS in 1996, her symptoms got worse in 2007

and 2008. Tr. 227. Nevertheless, the ALJ went on to identify inconsistencies between Ms. T.'s

letter, the medical evidence, and Plaintiff's work activities. Tr. 23–24. The ALJ noted that,

despite Plaintiff's allegedly worsening symptoms, the medical evidence documented that "MS

symptoms stable and respond to medications; no progression of disease; some mild weakness

and coordination difficulties but otherwise no significant neurologic/motor/ sensory deficits,

normal gait, etc." Tr. 22–23. The ALJ also noted that Plaintiff reported that "she continued to

look for work for several years afterwards, which is inconsistent with her allegations of an

inability to work." Tr. 24. Thus, despite the initial mischaracterization, the ALJ provided specific

and germane reasons for rejecting Plaintiff's daughter's statements.

//

//

_____

[4] Plaintiff has informed that Court that Ms. T. was named incorrectly as Ms. P. in both the record
and Plaintiff's Brief.

**CONCLUSION**

The decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

      Dated: _____January 9, 2020_.

 

_____

MARCO A. HERNÁNDEZ
United States District Judge